```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF LOUISIANA
```

GWENN BROWN                                          CIVIL ACTION

versus                                               NO. 06-5756

TRINITY CATERING, INC., ET AL                        SECTION: E/1

### RULING ON MOTION

Defendant Trinity Catering, Inc., ("Trinity") filed a motion for summary judgment on the issue of whether the plaintiff, Gwenn Brown ("Brown"), is a Jones Act seaman. R.d. #40. The plaintiff, Gwenn Brown ("Brown") opposes the motion.

### BACKGROUND

At the time of his alleged accident in 2005, Brown was employed by Trinity as a galley hand or cook, and was assigned to the M/V WOTAN[1], owned and operated by Manson Construction Co. ("Manson"). Brown worked only two hitches aboard the M/V WOTAN during his brief employment by Trinity: the first during the first two weeks of January[2]; and the second hitch from January 16 to January 25, 2005. Brown was quartered in one of the bunk rooms,

---

[1] Trinity's memorandum refers to the "A/B WOTAN" and the "D/B WOTAN", while the Complaint refers to the "M/V WOTAN". For clarity and consistency, the Court will use the name "M/V WOTAN".

[2] There is some confusion regarding the exact dates of the first hitch Brown worked, which is immaterial to the question of his seaman status. The affidavit of Mr. Thomas Wayne Holmes, the Health Safety and Environmental Manager of Trinity, Ex. B to Trinity's memorandum, and the "work history" attached to the affidavit, state that Brown's first hitch aboard the M/V WOTAN was from January 6 to January 12, 2005, while the text of the memorandum gives the dates as January 1 to January 9.

each of which contains two bunk beds. Access to the upper berth is provided by a short wooden ladder having three steps up to the bunk. Brown alleges that on January 25th, as he was descending the ladder, his foot slipped on the bottom rung and he landed upright on the bunk room floor. Although he alleges that he felt a "pop" in his knee at the time, he did not report an accident. He did not return to work his next assignment on a different vessel. Ultimately, he filed suit against Trinity and Manson under the Jones Act and general maritime law, alleging negligence, the unseaworthiness of the vessel, and entitlement to maintenance and cure. Trinity filed this motion for summary judgment that Brown has no claim against it under the Jones Act, for unseaworthiness under general maritime law, and is not entitled to maintenance and cure because he is not a Jones Act seaman.

## ANALYSIS

A motion for summary judgment is properly granted only if there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L. Ed. 3d 265 (1986). An issue is material if its resolution could affect the outcome of the action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In deciding whether a fact issue has been created, we must view the facts and the inferences to be drawn therefrom in the light most

favorable to the nonmoving party.  *See* Olabisiomotosho v. City of Houston, 185 F.3d 521, 525 (5th Cir. 1999).  However, once a moving party properly supports a motion for summary judgment, the nonmoving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial."  Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309, 311-12 (5th Cir. 1999), *quoting* Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047-48 (5th Cir. 1996).  The nonmoving party cannot satisfy its burden with "unsubstantiated assertions" or "conclusory allegations."  Id.

If the nonmoving party would bear the burden of proof on a claim at trial, the moving party need not negate the elements of that claim, but only to "point out the absence of evidence supporting the nonmoving party's case". Stultz v. Conoco, Inc., 76 F.3d 651, 656 (5th Cir. 1996), *quoting*  Skotak v. Tenneco Resins, Inc. 953 F.2d 909, 913 (5th Cir. 1992)(*quoting* Latimer v. Smithkline & French Laboratories, 919 F.2d 301, 303 (5th Cir. 1990)).  "As to material facts on which the nonmovant 'will bear the burden of proof at trial, the nonmovant must come forward with evidence which would be sufficient to enable it to survive a motion for directed verdict at trial." Stultz, 76 F.3d at 656, *quoting* Skotak, 953 F.2d at 913.

Although determination of whether an injured worker is a

seaman under the Jones Act is a mixed question of law and fact that is usually a question for a jury to decide, "judgment as a matter of law is mandated where the facts and the law will reasonably support only one conclusion." Becker v. Tidewater, Inc., et al, 335 F.3d 376, 386 (5th Cir. 2003) *citing* Harbor Tug and Barge Co., v. Papai, 520 U.S. 548, 553, 117 S.Ct. 1535 (1997).  The plaintiff bears the burden of proof for establishing seaman status.  Becker, 335 F.3d at 390, *citing* Barrett v. Chevron, U.S.A., Inc., 752 F.2d 129, 132 (5th Cir. 1985).

In Chandris, Inc., v. Latsis, 115 S.Ct. 2172 (1995), the Supreme Court was called upon to determine "what *relationship* a worker must have to the vessel, regardless of the specific tasks the worker undertakes, in order to obtain seaman status." Id., 115 S.Ct. at 2181.  After a lengthy and thorough review of the history of Jones Act cases and the Longshore and Harbor Workers Compensation Act ("LHWCA") cases fleshing out the contours of "seaman status" for purposes of the Jones Act, the Supreme Court rejected a "voyage test"[3] concluding that "[l]and-based maritime workers do not become seamen because they happen to be working on board a vessel when they are injured, and seamen do not lose Jones

---

[3]Under the voyage test, "any maritime worker who is assigned to a vessel for the duration of a voyage – and whose duties contribute to the vessel's mission – should be classified as a seaman for purposes of injuries incurred during that voyage." Chandris, 115 S.Ct. 2186.

-4-

Act protection when the course of their service to a vessel takes them ashore." 115 S.Ct. at 2186. The Supreme Court further instructed that "[s]eaman status is not coextensive with seaman's risks." Id.

In Chandris, the Supreme Court articulated a two-prong test to determine if an individual worker is a "seaman" entitled to the protections of the Jones Act: (1) "an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission"; and (2) "a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both duration and nature." Id. at 2190; Becker, 335 F.3d at 387. Explaining the significance of the second prong of its test, the Supreme Court stated:

> The fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea.

Chandris, 515 S.Ct. at 2190.

The Court further described the Jones Act inquiry a "status based" inquiry, not a "voyage based" inquiry, explaining that the inquiry is more than a "snap-shot" test "inspecting only the

-5-

situation as it exists at the instance of the injury; a more enduring relationship is contemplated ..." Id., at 2187, *quoting* Easley v. Southern Shipbuilding Corp, 965 F.2d 1, 5 (5th Cir. 1992), *cert denied*, 113 S.Ct. 969 (1993).  The Chandris Court considered it important that a seaman's connection to a vessel in fact be substantial both in its duration *and* nature.  Id. at 2191; Roberts v. Cardinal Servs. Inc., 266 F.3d at 374.  Thus, seaman status is not *merely* a temporal concept, but necessarily includes a temporal element.  Chandris at 2191.

A 30 percent "rule of thumb" established by the Fifth Circuit to determine whether a plaintiff can meet the substantial in duration portion of the second prong was cited with approval by the Supreme Court in Chandris.  A worker who spends less than about 30 percent of his time in the service of a vessel, or an identifiable fleet of vessels, in navigation should not qualify as a Jones Act seaman.  Becker, 335 F.3d at 388-89, *citing* Roberts v. Cardinal Servs. Inc., 266 F.3d 368, 375 (5th Cir. 2001); Chandris, 115 S.Ct. at 2191.

There is no dispute that Brown satisfies the first prong of the test.  Trinity asserts that Brown cannot meet the second prong of the Chandris test because Brown, as a cook or galley worker temporarily assigned to the M/V WOTAN, did not have the requisite substantial connection to a vessel or identifiable group of vessels

-6-

to qualify as a Jones Act seaman.  Trinity provides steward personnel to a large variety of customers on various types of offshore installations and vessels.  It asserts that had he remained in Trinity's employ, Brown would not have worked a substantial period of his employment on the M/V WOTAN, or any specific vessel or identifiable fleet of vessels, as defined by the Fifth Circuit.

It is undisputed that Brown was employed by Trinity for a brief time, apparently only from January 1 to March 3, 2005.  Brown testified at his deposition that he worked only two hitches during his employment, both in January 2005 and both on the M/V WOTAN, and that he had been transferred to another vessel after the second hitch.[4]  Trinity Memo, Ex. A, pp. 19, 22.  He testified that he "never made it to the other rig" because of his injury.  Id. Thomas Holmes, the Health Safety and Environmental Manager of Trinity, testified by affidavit.  Trinity memo, Ex. B. Holmes testified that Brown would have been assigned to work on various vessels and platforms as demonstrated by the work histories of other Trinity employees who had been assigned to work on the M/V WOTAN.  Id.  He  attached to his affidavit summaries of the work

---

[4]There is also some dispute about the exact number of days Brown worked in each hitch.  In his deposition, he described a 14-day hitch, after which he was off for seven days, then returned for the second hitch which was nine days.  Ex. A, Brown Depo., p. 19.  This discrepancy is immaterial, as it is undisputed that he did not return to work after January 25, 2005.

histories from August 1, 2004 to January 1, 2006, of 36 similarly situated employees who had been assigned to work on the M/V WOTAN during that time period, showing that 230 different companies were represented in the 479 work assignments.

Brown responds that he does meet the second prong of the Chandris test because he spent 100% of his working time as an employee of Trinity aboard the M/V WOTAN. He argues that the Court need only look at a plaintiff's duties for the particular employer in question, citing Papai, 520 U.S. at 556-557. Brown further points out that of the 36 employee histories listed in Trinity's Ex. B, four out of the five on the first page spent 30% or more of their work assignments on vessels owned by a single owner, Tetra, and therefore qualify as Jones Act seamen, while the fifth employee spent 100% of his 29 day employment with Trinity on board the M/V WOTAN, as did Brown himself. He argues that the employment histories simply illustrate the mere possibility that he would have continued to work random assignments, and does not mean that he automatically would have forfeited his seaman status had he worked for Trinity for a longer time period.

Trinity replied that Brown has merely raised speculation that he might have met the 30% test had he worked longer for Trinity. Trinity also argues that only four of the 36 employees represented in the work histories in Exhibit B worked 30% of their time on

vessels owned by Manson companies. The work histories attached to Ex. "B" of Trinity's memo demonstrate that from August 1, 2004 to January 1, 2006, a 17 month period, 36 Trinity employees worked 479 assignments on vessels or platforms owned by 230 different companies. Of those employees, four actually worked on Manson owned vessels for 30% or more of their working assignments, but two of those, including Brown, worked only two hitches while employed by Trinity for two months or less, both hitches aboard the M/V WOTAN.

The difficulty with the issue before the court is the brevity of Brown's work history with Trinity. Becker is distinguishable on the facts because Becker was actually a land based employee who was sent offshore for one twelve hour shift to relieve an overworked crew. Had he not suffered a devastating injury during that shift, he would have returned to his land-based employment. Unlike Becker, Brown was hired to work solely on vessels in navigation doing the ship's work. In Roberts, the issue before the court was whether the plaintiff satisfied the temporal prong of the substantial connection test. 266 F.3d at 376. The plaintiff, a wireline worker who was assigned to work on a number of vessels owned by various owners, argued that the court should consider his work time on all vessels when calculating the percentage of his time spent on vessels to reach the 30 percent rule. Declining to

do so, the Roberts court reaffirmed that to reach the 30 percent of work time on a vessel necessary to qualify as a seaman, an employee must establish an attachment to a particular vessel or to an identifiable fleet of vessels subject to common ownership.  Id. at 375.

In Papai, the plaintiff was hired through a union hall for a one day job to paint a vessel at dockside, and was not going to sail with the vessel when he finished his painting job.  Papai, 117 S.Ct. at 1542.  The Papai Court sought to clarify the Chandris test by explaining that the phrase "identifiable group of vessels" requires common ownership or control of the group of vessels.  Id. It concluded that Papai was not a seaman because none of his work on the vessel at the time of his injury was of a seagoing nature, and that the 12 prior employments he had with Harbor Tug in the 2 and ½ months prior to the assignment during which he was injured – all as secured through the union hall – was not sufficient to meet the second prong of the Chandris test.  The Court described these prior engagements as "discrete", separate from the one during which he was injured, and "was the sort of 'transitory or sporadic' connection to a vessel or group of vessels that, as we explained in Chandris, does not qualify one for seaman status."  Id. at 1542. As it had in Chandris, the court in Papai emphasized that "[t]he substantial connection test is important in distinguishing between

sea- and land-based employment, for land-based employment is inconsistent with Jones Act coverage." Papai, 117 S.Ct. at 1543.

In Manuel v. P.A.W. Drilling & Well Service, Inc., 135 F.3d 344 (5th Cir. 1998), the plaintiff had been employed for two months, all of which was spent on one barge doing p&a work. 135 F.3d at 352. After determining that the barge on which Manuel worked was a vessel as a matter of law, the court proceeded to the second prong of the Chandris inquiry into seaman status. Id. The defendant argued that Manuel was only employed for two months, and although he spent all two months on one vessel he was subject to transfer at any time and therefore did not meet the second prong of the Chandris test. The court disagreed, observing that the Chandris Court made it clear that "the adequacy of the plaintiff's connection to a vessel is properly assessed on the basis of his work assignment at the time of his injury." Id. It concluded that the fact that Manuel was subject to reassignment by his employer at any time was of "no moment", because he remained assigned to the same vessel for the entire two months leading to his injury. Id.

The facts of Joseph v. Marine Management Contractors, Inc., 2007 WL 1964527 (S.D. Tex. 7/3/07), are very similar to those in this case. Joseph worked as a galley hand for the defendant for about eight months. Id. at *1. Defendant supplied a sea-based catering crew to provide all onboard cooking, cleaning, and

-11-

housekeeping tasks.  Id.  Joseph had worked on two barges, working twenty-one day hitches with fourteen days off duty, since he began working for the defendant.  Id. at *2.  He was ten days into his second twenty-one day hitch on the PECOS HORIZON, the second barge to which he had been assigned, when he was injured.  Id.  Defendant filed a motion for summary judgment on the issue of Joseph's status as a Jones Act seaman.  The parties agreed that Joseph was not permanently attached to the PECOS HORIZON and that the PECOS HORIZON was a vessel in navigation.  Id. at *5.  The dispute was whether Joseph's connection to a vessel or an identifiable fleet of vessels was substantial enough in duration and nature to pass the second prong of the Chandris test.  Id.  Another worker employed by the defendant and assigned to the PECOS HORIZON testified that he had been assigned to the PECOS HORIZON for two continuous years, although he was subject to reassignment at any time and had worked on other vessels while employed by the defendant.  Id. at *1.

The Joseph court analyzed the "substantial nature" and "substantial duration" portions of the second prong of the test separately.  It first  found that Joseph satisfied the "substantial nature" portion of the Chandris test because his employment was of a substantial sea-based nature - he spent 100% of his working time at sea in service of the vessel to which he was assigned, exposed to the perils of the sea.  Id., at *6.  Next, citing Chandris and

-12-

Manuel, the court observed that an assignment need not be permanent to satisfy the substantial duration element of the Chandris test, and that the fact that an employee could have been reassigned to other work locations in the future does not preclude seaman status. Id. at *7-8. Ultimately, the court found that a reasonable jury could find that Joseph's connection to the PECOS HORIZON could be substantial in duration as well. Id. at *8. The court concluded that:

> Repeated hitches where the employee was exclusively furthering the mission of the vessel, where he spent one-hundred percent of his working time on the vessel, and where he slept and ate on the vessel for multiple three-week periods over the course of nearly two months raises a fact issue as to plaintiff's seaman status under the Chandris test.

Id., *8.

In this case, Brown worked two hitches of nine days each, a total of eighteen days on a vessel in navigation. He spent one-hundred percent of his time working on the vessel where he ate and slept, over the course of less than four weeks total. Unlike the plaintiff in Joseph and Manuel, Brown was not merely subject to reassignment to a different vessel, he had actually been reassigned although he did not report for the assignment because, he claims, of his injury.

Chandris instructs that this inquiry into plaintiff's seaman

status should not be confined to a "snapshot" of Brown's employment. Considering the brevity of Brown's employment by Trinity, a "snapshot" is all that Brown has provided the court. Clearly, Brown's employment aboard the M/V WOTAN satisfies the "substantial nature" portion of the Chandris test because his employment was of a substantial sea-based nature – he spent 100% of his working time at sea in service of the vessel to which he was assigned, exposed to the perils of the sea.

In order to adhere to the Chandris Court's admonition that the employment on a vessel must also be substantial duration, the court must look beyond Brown's brief actual employment history at Trinity to Trinity's established employment patterns and practices. Trinity has demonstrated that, given its documented practice of randomly assigning its employees to hundreds of vessels owned by more that two hundred different owners, it is highly unlikely that Brown would have spent 30 percent of his time on a vessel or a group of vessels owned by Manson. Given his brief and limited employment tenure by Trinity and aboard the M/V WOTAN, the Court finds that Brown has not shown the necessary connection of substantial duration to a vessel or an identifiable fleet of vessels sufficient to establish Jones Act seaman status, as it is defined by the Supreme Court and applied in the Fifth Circuit, to present a disputed issue to a jury.

Trinity is entitled to summary judgment on the issue of Brown's status as a Jones Act seaman.  As a matter of law, Brown has no cause of action against Trinity under general maritime law for the unseaworthiness of the vessel, or against Trinity pursuant to the Jones Act for negligence and maintenance and cure.

Accordingly;

**IT IS ORDERED** that Trinity's motion for summary judgment is **GRANTED,** dismissing with prejudice Brown's claims against Trinity pursuant to the Jones Act for negligence and maintenance and cure, and his claims for the unseaworthiness of the vessel under general maritime law.

New Orleans, Louisiana, this 11th day of December, 2007.

_____
**MARCEL LIVAUDAIS, JR.**
**Senior United States District Judge**